```
            IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT BLUEFIELD
```

MARK LYNN JEFFREY,

    Petitioner,

v.                                          CIVIL ACTION NO. 1:17-03021

DONNIE AMES, Superintendent,
Mt. Olive Correctional Complex,

    Respondent.

## MEMORANDUM OPINION AND ORDER

By Standing Order, this action was referred to United States Magistrate Judge Dwayne L. Tinsley for submission of findings and recommendation regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Tinsley submitted to the court his Proposed Findings and Recommendation ("PF&R") on June 17, 2020, in which he recommended that the court deny petitioner's petition under 28 U.S.C. § 2254 and dismiss this case from the court's active docket. (See ECF No. 27.)

In accordance with the provisions of 28 U.S.C. § 636(b), petitioner was allotted fourteen days and three mailing days in which to file any objections to Magistrate Judge Tinsley's Findings and Recommendation. The failure of any party to file such objections within the time allowed constitutes a waiver of such party's right to a *de novo* review by this court. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989).

1

On June 25, 2020, petitioner, acting *pro se*, filed a motion seeking an extension of time to file objections to the PF&R. (See ECF No. 29.) In his motion, petitioner stated that COVID-19 precautions, including reduced operating hours for the law library and reduced hours for those assisting him, were hampering petitioner's ability to properly research and present his response to the PF&R. (See ECF No. 29.) On June 26, 2020, the court granted petitioner's motion and gave him until August 30, 2020, to file objections. (See ECF No. 31.) Petitioner timely filed objections.

## I.  Factual Background

Magistrate Judge Tinsley's PF&R provides the background to this petition. To summarize, on November 3, 2011, a jury in Mercer County found petitioner guilty of multiple counts of sexual abuse, one count of sexual assault, and two counts of purchasing a child. Attorney Robert Holroyd, who had been practicing for 57 years at the time (see ECF No. 24, Ex. 2), represented petitioner at trial. On January 23, 2012, the state circuit court sentenced petitioner to an effective term of imprisonment of 15-45 years.

Upon direct appeal, the Supreme Court of Appeals of West Virginia ("the SCAWV") affirmed petitioner's conviction. Petitioner then filed a habeas petition in the circuit court. Once Paul R. Cassell became his attorney, he filed an amended

petition. The circuit court denied the habeas petition, and the SCAWV affirmed. Petitioner then filed this petition under 28 U.S.C. § 2254. After petitioner's unexhausted claims were severed, his petition proceeded on two claims: (1) ineffective assistance of counsel; and (2) cumulative error.

II. **Standard of Review of *Pro Se* Objections**

Pursuant to Fed. R. Civ. P. 72(b), the court must "make a *de novo* determination upon the record . . . of any portion of the magistrate judge's disposition to which specific written objection has been made." However, the court is not required to review, *de novo* or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). Furthermore, *de novo* review is not required and is unnecessary "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982); see also United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007) ("[T]o preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection."); McPherson v.

3

Astrue, 605 F. Supp. 2d 744, 749 (S.D.W. Va. 2009) ("[F]ailure to file a specific objection constitutes a waiver of the right to de novo review.").

"A document filed pro se is 'to be liberally construed.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Specifically as to objections to a PF&R, courts are "under an obligation to read a pro se litigant's objections broadly rather than narrowly." Beck v. Comm'r of Internal Revenue Serv., 1997 WL 625499, at *1-2 (W.D.N.C. June 20, 1997) (citing Orpiano, 687 F.2d at 48). However, objections that are "unresponsive to the reasoning contained in the PF&R" are irrelevant and must be overruled. Kesterson v. Toler, 2009 WL 2060090, at *1 (S.D.W. Va. July 7, 2009) (citing Orpiano, 687 F.2d at 47).

### III. **Petitioner's Objections**

Petitioner objects to the PF&R's overall conclusion that the state courts' findings regarding his ineffective assistance of counsel claim and cumulative error claim were neither contrary to, nor an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts presented in the state court proceeding. More specifically, petitioner objects to four of the PR&R's findings. First, he objects to the findings regarding his argument that his counsel should have moved to

4

sever the charges against him. Second, he objects to the findings regarding his argument that his counsel should have put forth more effort to admit into evidence a purported custody contract. Third, he objects to the findings regarding his argument that his trial counsel should have put forth more effort to try to exclude certain testimony as irrelevant or unfairly prejudicial. Finally, petitioner objects to the findings regarding his claim of cumulative error.

Petitioner's objections are mainly to the overall conclusions of the PF&R and repeat arguments he has already made. Nevertheless, to the extent feasible, the court will conduct a *de novo* review.

## IV. Discussion

The standards established by the United States Supreme Court in determining whether a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). Under Strickland, a plaintiff must show (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable. Id. at 687-91. Counsel's performance is entitled to a presumption of reasonableness. Id. Thus, a habeas plaintiff challenging his conviction on the grounds of ineffective

5

assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies. Id. at 689.

"Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citing Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Id. (quoting Strickland, 466 U.S. at 690). The Fourth Circuit specifically recognized that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087 (1993). On the prejudice prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

"Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem,

6

review is 'doubly' so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105 (citations omitted).

### a. Failure to Seek Severance of Charges

Petitioner speculates as follows:

> By motioning for severance, the State would have tried the Sexual Abuse charges first. If the accusations had failed, certainly the Purchasing of Children charges would have been dismissed due to lack of motive. Or, in the alternative, Petitioner may have still been tried for Purchasing of Children, but a 404(b) hearing would have been held regarding the acquittal of the Sexual Abuse charges."

(ECF No. 32, at 3.)

Other than offering these speculations, petitioner does not attempt to refute respondent's argument that he was not entitled to severance under West Virginia law because evidence of the inappropriate touching would have been admissible anyway. See Syl. Pt. 2, State v. Milburn, 511 S.E.2d 828 (W. Va. 1998).

While petitioner seems to assume that a motion to sever would have been granted, the state courts' rejection of

7

petitioner's severance argument can be read to assume that the motion to sever would have been denied. West Virginia law is clear that "[a] defendant is not entitled to relief from prejudicial joinder pursuant to Rule 14 . . . when evidence of each of the crimes charged would be admissible in a separate trial for the other." State v. Gibbs, 238 W. Va. 646, 655, 797 S.E.2d 623, 632 (2017) (quoting Syl. Pt. 2, Milburn). But even if petitioner was not *entitled* to severance, the trial court still had discretion to order severance. See State ex rel. Games-Neely v. Sanders, 565 S.E.2d 419, 423, 429 (W. Va. 2002) (holding that although initial joinder was proper, trial court had discretion to *sua sponte* reverse its earlier order denying severance). The trial court here acknowledged its authority to sever the charges in its discretion when it asked counsel whether there had been a motion to sever. (ECF No. 24, Ex. 2.)

    Even if the state courts' analysis rested on the incorrect assumption that severance would not have been permissible (as opposed to required), however, that would not result in an unreasonable application of Strickland. First, although a motion to sever had a chance of being granted, it would not have been a slam-dunk. The prosecution likely would have cited multiple SCAWV opinions showing that severance was not required. Second, even if the motion were granted, the evidence of inappropriate touching still would have been admissible.

8

Petitioner's speculations about how a motion to sever would have changed things simply do not clear the high bar of showing a reasonable probability of a different result "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

There is certainly a reasonable argument that petitioner's trial counsel met the Strickland standard despite not moving to sever the charges. More specifically, there is a reasonable argument that because petitioner was not entitled to severance and because the allegedly prejudicial evidence would likely be admitted anyway, counsel's representation did not fall below the objective standard of reasonableness. There is also a reasonable argument that, for the same reasons, petitioner has not shown a reasonable probability that the result would have been different had his trial counsel moved for severance.

Moreover, petitioner's trial counsel articulated a strategy reason for not moving to sever that was not objectively unreasonable. During a hearing prior to trial, the trial court questioned counsel as to whether anyone had moved to sever the charges:

> THE COURT: [N]obody ever moved for a severance in that, between these two, between Counts 1 and 2 and the rest of them?
>
> MR.HOLROYD: Well, Judge, I think it's crucial for this jury to know the whole story.

9

(ECF No. 24, Ex. 2.) Counsel explained that petitioner's theory of the case was that the mother of the children whom he was trying to "protect" was trying to retaliate against him. (See id.) Advancing this theory involved showing that the mother truly was trying to negotiate the sale of her children. (See id.) Severance simply did not fit with petitioner's plan of telling the jury "the whole story." (See id.)

Petitioner has failed to overcome "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (1984) (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

To the extent that petitioner may deny having received a hearing under West Virginia Rule of Evidence 404(b), he is wrong. At that hearing, Judge Derek C. Swope heard testimony from A.P. and C.R., as well as from therapist Phyllis Hasty, who treated them. (ECF No. 24, Ex. 2.) Notwithstanding that "from a personal standpoint," he had "a lot of concern about 404B evidence" Judge Swope concluded that the acts had occurred and ruled that the evidence of sexual abuse was admissible.[1] (Id.)

Therefore, this objection is **OVERRULED**.

---

[1] "Like I say . . . I didn't start out with 404B. It's a creature that's developed since I've been a lawyer, and I'm not—you know, I always have worries about it. I'll just be honest with you, but I think it—you know, under the law, it's admissible, so I'm going to let it in and give the proper instruction." (Id.)

10

### b. Failure to Authenticate and Admit Exhibit

Petitioner also argues that his trial counsel's failure to admit an exhibit consisting of a purported custody contract between the victims of the attempted purchase and their mother was a Strickland error, and that the state court's determination otherwise was contrary to, or an unreasonable application of, federal law. He says that no reasonably qualified attorney would "fail to exhaust" his trial counsel's "numerous opportunities to admit this evidence." (ECF No. 32, at 5.) Specifically, he argues that his counsel should have hired a handwriting expert or called a lay witness familiar with Sylvia's handwriting. "Decisions about what types of evidence to introduce 'are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce.'" Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998) (quoting Pruett v. Thompson, 996 F.2d 1560, 1571 n.9 (4th Cir. 1993)).

As the PF&R explains, petitioner's trial counsel tried to admit the purported contract, but he was unable to authenticate Sylvia Jeffrey's signature on it because she denied having signed it and petitioner's wife denied having seen Sylvia sign it. As the PF&R further explains, although petitioner's counsel was unable to introduce the exhibit, he was still able to elicit

11

evidence of the alleged agreement that the exhibit purportedly memorialized: one where Sylvia had agreed to grant custody of the victims to petitioner and his wife.

Moreover, it is unclear how the admission of the purported contract would have resulted in a reasonable probability of a different result. It was not unreasonable for the state courts to determine that there was no reasonable probability of a different result had the exhibit been admitted. Having reviewed the record, the state court's finding of no Strickland error resulting from the lack of admission of the exhibit was not contrary to, or an unreasonable application of, federal law. Therefore, this objection is **OVERRULED**.

### c. Failure to Object to Allegedly Irrelevant or Unfairly Prejudicial Evidence

Petitioner also objects to the PF&R's ultimate finding as to his claims of Strickland error based on his trial counsel's failure to object to various evidence, including (1) A.P.'s testimony that she was abused in Tennessee; (2) Phyllis Hasty's testimony that A.P. told her about this abuse in the course of therapy; and (3) Christopher Bell's and Cpl. Long's testimony regarding their investigation of petitioner's report to West Virginia Child Protective Services. At the 404(b) hearing concerning evidence of sexual abuse of A.P., the trial court made very clear that it was letting in this evidence. Also,

12

although A.P. did not testify that she was abused in Tennessee, her sister, C.R., did. (See ECF No. 24, Ex. 2.)

Because the court had admitted such evidence as to C.R., and as to abuse of A.P. in West Virginia, counsel's failure to object to evidence of abuse against A.P. in Tennessee almost certainly would have been futile. The court had also already ruled that Hasty's testimony would come in under the exception to hearsay for a treating therapist. See State v. Pettrey, 549 S.E.2d 323, 454, 460 (W. Va. 2001) (holding that testimony by therapist Phyllis Hasty was admissible "under the medical diagnosis or treatment exception to the hearsay rule"). Concerning the testimony of Christopher Bell and Cpl. Long, this evidence appears to have been relevant to refuting petitioner's defense that he was trying to save the victims from a bad environment, and not substantially outweighed by a danger of unfair prejudice. Petitioner's counsel's decision to refrain from making objections that were very unlikely to be sustained does not amount to deficient representation, and it was certainly reasonable for the state courts to so find. Moreover, as the PF&R points out, the trial court made sure to provide a limiting instruction for any 404(b) evidence that was admitted. Therefore, this objection is **OVERRULED**.

### d. Cumulative Error

In his fourth and final objection, which is based on cumulative error, petitioner makes the conclusory statement that without the purported errors he alleges, the jury would not have found him guilty. As he does not point to a specific problem with the analysis set forth in the PF&R, his objection is not entitled to *de novo* review. The court finds no error in the PF&R's analysis. As it correctly points out, for there to be cumulative error, there must first be constitutional error, and there was none here. See Fisher v. Angelone, 163 F.3d 835, 852 n.9 (4th Cir. 1998). Therefore, this objection is **OVERRULED**.

### V. Conclusion

The court has reviewed the record, the Magistrate Judge's findings and recommendations, and petitioner's objections. For the foregoing reasons, petitioner's objections are **OVERRULED**. The court adopts the Findings and Recommendation of Magistrate Judge Tinsley as follows:

1. Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**;
2. This action is **DISMISSED**; and
3. The Clerk is directed to remove this case from the court's active docket.

Additionally, the court has considered whether to grant a certificate of appealability. See 28 U.S.C. § 2253(c). A

14

certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001). The court concludes that the governing standard is not satisfied in this instance. Accordingly, the court **DENIES** a certificate of appealability.

The Clerk is further directed to forward a copy of this Memorandum Opinion and Order to counsel of record and unrepresented parties.

**IT IS SO ORDERED** this 25th day of September, 2020.

ENTER:

David A. Faber
Senior United States District Judge